UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RESORT BNB INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>TRUIST BANK,<br><br>    Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:23-cv-01784-KMW-EAP<br><br>**MEMORANDUM OPINION** |

**Ronald P. Sierzega, Esq.**
PUFF, SIERZEGA & MACFEETERS LLC
122 Delaware St.
Woodbury, NJ 08096

*Counsel for Plaintiff Resort BNB Incorporated*

**David G. Murphy, Esq.**
REED SMITH LLP
506 Carnegie Center, Suite 300
Princeton, NJ 08540

*Counsel for Defendant Branch Banking and Trust Company*

**WILLIAMS, District Court Judge:**

### I. INTRODUCTION

This matter comes before the Court by way of the Motion of defendant Truist Bank ("Truist") to dismiss the Amended Complaint of plaintiff Resort BNB Inc. ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed Truist's Motion. For the reasons set forth below, Truist's Motion is granted.

### II. BACKGROUND

On February 24, 2023, Plaintiff commenced this action by filing a Complaint in the Superior Court of New Jersey, Chancery Division, Gloucester County. (ECF No. 1-1.) After timely removing Plaintiff's action based on diversity of citizenship, Truist moved to dismiss the Complaint for failure to state a claim, which this Court subsequently granted over Plaintiff's

1

objection. (ECF Nos. 1, 6, 10.) In doing so, the Court noted that the Complaint alleged only eight paragraphs of factual matter, did not purport to assert any cause of action, and thus failed to satisfy the minimal pleading standards under Federal Rule of Civil Procedure 8(a). (ECF No. 8 at 2 n.3.) Though the Court dismissed the Complaint, it did so without prejudice and granted Plaintiff leave to submit an amended pleading. (*Id.*) On January 8, 2024, Plaintiff filed an Amended Complaint, which occasioned the instant Motion to Dismiss before the Court.

The factual allegations Plaintiff avers are nearly identical to those contained in its initial pleading. According to the Amended Complaint, Plaintiff opened a bank account with Truist on January 17, 2020. *See* Am. Compl. ¶ 6. Days later, on January 21, 2020, a deposit was made into Plaintiff's Truist account by a separate bank in the amount of $23,537.77. *See id.* ¶ 7. At some unspecified time thereafter, Truist informed Plaintiff that it was "being investigated for fraud" and that its account would consequently be frozen for a ninety-day period. *See id.* ¶ 9.

The Amended Complaint does not deny that Plaintiff was being investigated for fraud or otherwise claim that Truist lacked a suspicion of the same. Even so, Plaintiff concludes that Truist acted "in bad faith" and "wrongfully froze" its account. *Id.* ¶¶ 11–12. As to how precisely it did so, Plaintiff does not say. Though, Plaintiff appears to imply, without alleging as much, that Truist's decision to freeze its account was attributable to a remark made by Plaintiff's owner, William O'Hanlon, in which he allegedly conveyed to a Truist bank manager the day prior his "pride in hiring and employing minorities." *Id.* ¶ 8.

### III.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

IV. **DISCUSSION**

The Amended Complaint contains two counts, both of which are predicated on Article 4 of the Uniform Commercial Code ("UCC"), as adopted in New Jersey. The Court addresses each in turn.

 A. <u>**"Wrongful Freeze"**</u>

Count I of the Amended Complaint purports to assert a cause of action based on an alleged violation of UCC § 4-103. Describing its claim as one for "wrongful freeze," Plaintiff submits that § 4-103 imposes a duty on banks to "exercise ordinary care" and "good faith," and claims that

3

Truist violated those duties when it imposed a ninety-day freeze for suspected fraud.[1] Am. Compl. ¶ 13. In its Motion, Truist argues that Count I should be dismissed because § 4-103 does not create a private cause of action. The Court agrees with Truist.

The specific provision on which Plaintiff relies, namely § 1-403(a), is an introductory provision to Article 4 that permits parties to vary their respective rights and obligations by agreement. It provides as follows:

> The effect of the provisions of this chapter [*i.e.*, Article 4] may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable.

N.J. STAT. ANN. § 12A:4-103(a); *see also id.* cmt. n.2 ("Subsection (a) confers blanket power to vary all provisions of the Article by agreements of the ordinary kind."). The only limits on that prerogative are tied to a bank's duties of "good faith" and "ordinary care," as prescribed and defined in other provisions of the UCC. *See, e.g., id.* § 12A:4-202 (stating specific respects in which duty of ordinary care is imposed on collecting banks); § 12A:1-304 (imposing an "obligation of good faith" in the performance and enforcement of "[e]very contract or duty within the [UCC]").[2] This provision does not, as Plaintiff hypothesizes, create a private cause of action for "wrongful freeze."[3]

---

[1] Plaintiff more precisely claims that under § 4-103, "any bank handling a negotiable instrument has a duty to exercise ordinary care and in good faith." Am. Compl. ¶ 14. To be clear, "negotiable instrument," as defined in the UCC, does not relate to § 4-103 or even to Article 4 for that matter. *See Est. of Paley v. Bank of Am.*, 18 A.3d 1033, 1040 (N.J. Super. Ct. App. Div. 2011) ("Article 3 of the UCC, N.J.S.A. 12A:3-101 to -605, governs negotiable instruments, and Article 4, N.J.S.A. 12A:4-101 to -504, governs bank deposits and collections.").

[2] In any case, the statutory obligation of good faith under the UCC "does not support an independent cause of action for failure to perform or enforce in good faith . . . [and it] does not create a separate duty of fairness and reasonableness which can be independently breached." N.J. STAT. ANN. § 12A:1-304 cmt. n.1.

[3] The Court notes that Plaintiff has not supplied any authority in which a court has recognized the cause of action it attempts to raise. In fact, a review of relevant case law suggests that New Jersey courts have actually rejected previous attempts to imbue independently actionable duties into § 4-103. *See, e.g., Pennsylvania Nat. Turf Club, Inc.*

For all of these reasons, the Court grants Truist's Motion and dismisses Count I of the Amended Complaint with prejudice.

B. **Wrongful Dishonor of an Item**

Count II of the Amended Complaint is predicated on UCC § 4-402, which establishes a private, statutory cause of action against a bank that "wrongfully dishonors" an "item." *See* N.J. STAT. ANN. § 12A:4-402(a)–(b). It more specifically provides that a payor bank is liable to its customer for damages it proximately causes when "it dishonors an item that is properly payable." *See id.* Here, Plaintiff claims that when Truist froze its account, it violated § 4-402 insofar as it "wrongfully dishonored *the funds*" contained therein. Am. Compl. ¶ 24 (emphasis added). This claim instantly fails because a bank cannot, as a matter of law, wrongfully dishonor "funds" contained in a bank account under § 4-402.

"Item" is a defined term under Article 4. It includes "an instrument or a promise or order to pay money handled by a bank for collection or payment." N.J. STAT. ANN. § 12A:4-104(a)(9). Section 4-402 thus "deals with banks' handling of checks and promissory notes submitted for collection or payment." *Schillaci v. First Fid. Bank*, 709 A.2d 1375, 1381 (N.J. Super. Ct. App. Div. 1998). Regardless of the wrongdoing or nefarious motive Plaintiff attempts to ascribe to Truist's freeze, its claim fails because neither a customer's bank account nor the "funds" contained therein are "items" within the meaning of § 4-402. *See, e.g.*, *Doe v. Bank of Am., N.A.*, No. 16-3075, 2018 WL 295565, at *4 (D.N.J. Jan. 3, 2018) (granting motion to dismiss) (holding allegations that bank "withheld [plaintiff's] funds for almost 20 months without justification" did not constitute a wrongful dishonor of an "item" under UCC § 4-402); *Campbell v. Citibank, N.A.,*

---

*v. Bank of W. Jersey*, 385 A.2d 932, 935 (N.J. Super. Ct. App. Div. 1978) ("Reference to [§] 12A:4-103(5) as a fount of liability for the mismanagement by defendant bank is misplaced. This provision is one which defines the measure of damages for failure to exercise ordinary care in handling an item. It does not create a basis of liability.").

302 A.D.2d 150, 153, 755 N.Y.S.2d 367, 370 (2003) (holding that a "block" placed on banking customer account was not an "item" within the meaning of UCC § 4-402); *MRF Res. Ltd. v. Merchants Bank of New York*, 89 N.Y.2d 244, 248, 674 N.E.2d 1366, 1368 (1996) ("[A] hold placed on an account is not a wrongful dishonor of an item within the meaning of UCC 4–402.").

For all of these reasons, the Court grants Truist's Motion and dismisses Count II of the Amended Complaint with prejudice.

### C. <u>Breach of Contract</u>

In its Opposition to Truist's Motion, Plaintiff offers considerable argument as to how it has successfully pled a claim for breach of contract under New Jersey law. The problem, however, is that the Amended Complaint does not reference any contract or assert that Truist breached the same. It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (internal quotation marks omitted). What is more, this is not the first time Plaintiff has attempted just this. Indeed, when the Court granted Truist's first Motion to Dismiss, it rejected Plaintiff's attempts to shoehorn into its Complaint an unpled breach of contract claim. *See* Memo. Op. and Order (ECF No. 10 at 2) ("Beyond containing just eight paragraphs of scantly alleged factual matter, the Complaint does not purport to assert any cause of action at all, much less the ones Plaintiff's Opposition now suggests."). Clearly, Plaintiff has no intention of pleading a breach of contract claim. Regardless, such a claim would fail on the plain terms of the contract itself.

The parties acknowledge that they executed a Commercial Bank Services Agreement (the "Account Agreement") when Plaintiff first opened its account. They also do not dispute the

6

Account Agreement's validity or enforceability.[4] Section 23 of the Account Agreement states, in relevant part:

> [If] we believe your account is subject to fraudulent or impermissible activity, we may, at our discretion[,] . . . freeze all or any portion of the funds we deem appropriate until the dispute is resolved[.]"

(ECF No. 14-5 at 21.)

As previously indicated, Plaintiff has not claimed that Truist lacked a suspicion of fraud. In fact, Plaintiff's opposition papers concede that its principal, Mr. O'Hanlon, was under investigation by state and federal law enforcement for various financial crimes that allegedly occurred during the same time period Plaintiff's account was frozen. Plaintiff also acknowledges that Mr. O'Hanlon is a defendant in two, ongoing matters concerning this alleged fraud—a civil enforcement action initiated by the New Jersey Attorney general, and a criminal case brought by the U.S. Attorney for the District of New Jersey.[5]

Despite having once been given leave to submit an Amended Complaint, Plaintiff still has not pled or offered any facts plausibly suggesting that Truist wholly lacked a suspicion for fraud. Thus, a breach of contract claim, even if pled, would fail because an act authorized by the Account Agreement cannot, as a matter of law, constitute a breach of the same. *See Burns v. RD Bank, N.A.*, 1:21-cv-18194, 2022 WL 17547258, at *5 (D.N.J. Dec. 8, 2022) (observing that breach of contract

---

[4] The parties also agree that New Jersey law would apply to a breach of contract claim due to the governing law provision contained in the Account Agreement.

[5] It is separately worth mentioning that this Court not only presides over Mr. O'Hanlon's criminal case, but that it had, just last year, found probable cause to believe that Mr. O'Hanlon was actively using one or more of his businesses, including Plaintiff here, to perpetrate felony fraud while on pretrial release. *See* Order Modifying Conditions of Release, *U.S. v. O'Hanlon*, No. 1:23-cr-00257-KMW (D.N.J. Aug. 16, 2023) (Pascal, U.S.M.J.), ECF No. 64.

claims fail "if the plain language of the contract unambiguously contradicts or fails to support the plaintiff's allegation of breach").[6]

## V. CONCLUSION

For all of the reasons articulated above, the Court grants Truist's Motion and dismisses the Amended Complaint with prejudice.

Dated: August 30, 2024

                                                             */s/ Karen M. Williams*
                                                             KAREN M. WILLIAMS
                                                             U.S. DISTRICT COURT JUDGE

---

[6] The Court is mindful of Truist's argument that Plaintiff's UCC claims are also precluded by the authority granted to it under the Account Agreement. In this Court's view, considering the legal merits of these specific claims based on a contract that is neither referenced in nor attached to the Amended Complaint would run afoul of Federal Rule of Civil Procedure 12(d). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *see also Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011) (stating that "[i]t is not enough that a putatively integral document be critical for an affirmative defense, or bear on an essential element of the claim" to be considered on a motion to dismiss). However, the Court may consider the Account Agreement as part of a futility analysis for a breach of contract claim. *See United States v. Gertsman*, No. 15-8215, 2016 WL 4154916, at *3 (D.N.J. Aug. 4, 2016) (noting that a contract not attached to complaint could be considered on motion to dismiss if "the action is one for breach of that contract").